**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **NATHANIEL J. FERRACO** | ) | Case No. 15-12669-RGM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| **EAGLEBANK,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. _____ |
| | ) | |
| **NATHANIEL J. FERRACO** | ) | |
| | ) | |
| Defendant | ) | |

**COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT**

Plaintiff, EagleBank ("EagleBank"), by and through its undersigned counsel, hereby files this Complaint for Non-Dischargeability of Debt against Debtor, Nathaniel J. Ferraco ("Debtor"), and in support thereof states as follows:

**Parties**

1. On or about August 2, 2015 ("Petition Date"), the Debtor filed a Chapter 7 Petition in this Court.

2. The Plaintiff, EagleBank, is a Maryland corporation that maintains its principal place of business at 7830 Old Georgetown Road, Third Floor, Bethesda, Maryland 20814.

3. The Debtor resides at 43586 Popes Creek Square, Leesburg, Virginia 20176. The Debtor is Managing Member and 100% owner of DTREDS, LLC.

Stephen A. Metz (Va. Bar No. 89738)
Michael J. Lichtenstein (admitted *pro hac vice*)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
(301) 230-6564
(301) 230-5231
Counsel to EagleBank

4. The Debtor completed his undergraduate education at Pennsylvania State University and received a Masters of Business Administration degree from Liberty University. *See* Rule 2004 Deposition Transcript of Nathaniel J. Ferraco related to DTREDS, LLC ("Ferraco Dep.") 12:6-8. A copy of the Ferraco Dep. Transcript is attached hereto as <u>Exhibit 1</u>.

## Jurisdiction and Venue

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523(a).

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391.

7. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

## Factual Background

8. By this Complaint, EagleBank seeks a determination that the indebtedness that the Debtor owes to EagleBank is non-dischargeable in accordance with 11 U.S.C. § 523(a)(2)(B).

## The EagleBank Loans

9. EagleBank loaned DTREDS, LLC (the "Borrower") the original principal amount of $1,000,000.00, as evidenced by a certain Promissory Note dated May 21, 2013 ("Note 1"). A copy of Note 1 is attached hereto as <u>Exhibit 2</u>. The Debtor signed Note 1 as Manager and CEO for the Borrower.

10. EagleBank also extended a line of credit loan to the Borrower for the original principal amount of $1,500,000.00 as evidenced by a certain Promissory Note dated May 21, 2013 ("Note 2") (collectively, Note 1 and Note 2 are referred to as the "Notes"). A copy of Note 2 is attached hereto as <u>Exhibit 3</u>. The Debtor signed Note 2 as Manager and CEO for the Borrower.

11.     On May 21, 2013, the Debtor executed Unconditional Guarantees for the Notes (the "Guarantees") in which the Debtor unconditionally and absolutely guaranteed prompt payment of all amounts owed under the Notes. Copies of the Guarantees are attached hereto as Exhibit 4 and Exhibit 5.

12.     In connection with the Notes, the Borrower executed and delivered to EagleBank two Security Agreements dated May 21, 2013. The Security Agreement securing Note 1 is attached hereto as Exhibit 6 and the Security Agreement securing Note 2 is attached hereto as Exhibit 7 (collectively, the "Security Agreements").

13.     In the Security Agreements, the Borrower represented that all of the information provided to EagleBank concerning the Borrower for the purpose of obtaining or maintaining credit was accurate in all material respects.

14.     Specifically, the Security Agreements provided that "All information furnished to [EagleBank] concerning [the Borrower], the Collateral and the Obligations, or otherwise for the purpose of obtaining or maintaining credit, is or will be at the time the same is furnished, accurate and complete in all material aspects." Exhibit 6 at 3; Exhibit 7 at 3.

15.     The Debtor signed the Security Agreements as Manager and CEO for the Borrower.

16.     In connection with the Notes, the Borrower also executed and delivered to EagleBank a Loan Agreement dated May 21, 2013. A copy of the Loan Agreement is attached hereto as Exhibit 8.

17.     In the Loan Agreement, the Borrower certified that it was current on all federal, state and local taxes, including without limitation all payroll taxes. Exhibit 8 at 2.

18. The Debtor signed the Loan Agreement as Manager and CEO for the Borrower and the Debtor also signed as guarantor of the Notes.

19. On October 3, 2013, EagleBank, the Borrower, and the Debtor entered into a First Modification of Note pursuant to which EagleBank increased the maximum principal amount available under Note 2 from $1,500,000.00 to $2,500,000.00 (the "Modification") (collectively, Note 1, Note 2, and the Modification are referred to as the "Indebtedness"). A copy of the Modification is attached hereto as Exhibit 9.

20. On October 3, 2013, the Debtor executed a First Amendment to Guaranty in connection with the Modification. A copy of the First Amendment to Guaranty is attached hereto as Exhibit 10.

21. In connection with the Modification, the Borrower executed and delivered to EagleBank a First Amended Security Agreement dated October 3, 2013. A copy of the First Amended Security Agreement is attached hereto as Exhibit 11.

22. Specifically, in the First Amended Security Agreement the Borrower represented that "all representations and warranties made by the [Borrower] in the Security Agreement are true and correct as of the date hereof, with the same force and effect as if all such representations and warranties were fully set forth herein." Exhibit 11 at 2.

23. The Debtor signed the First Amended Security Agreement as Manager and CEO for the Borrower.

24. EagleBank filed a timely Proof of Claim against the Debtor in this proceeding on October 21, 2015.

25. As of the Petition Date, Debtor owed $968,372.56 pursuant to Note 1 and $2,671,164.64 pursuant to Note 2 and the Modification.

### A. Debtor Made False and Material Misrepresentations in the Loan Documents Provided to EagleBank

26. In order to induce EagleBank to lend money to the Borrower, the Debtor made certain false representations of material facts, provided EagleBank with an inaccurate personal financial statement and provided EagleBank with materially false and misleading documents concerning the Borrower's assets and liabilities.

27. In connection with the Indebtedness, the Debtor delivered to EagleBank a personal financial statement dated March 7, 2013 (the "Ferraco PFS") which indicated that he had a net worth of $17,112,400.00. A copy of the Ferraco PFS is attached hereto as Exhibit 12.

28. According to the Ferraco PFS, the Debtor's total income for 2013 was $283,680.00. S*ee* Exhibit 12 (Ferraco PFS at 4).

29. In 2014, the Debtor's tax return indicated that the Debtor earned $13,782.00 total income from salary and reported a business loss of $877,694.00. A copy of the Debtor's 2014 Tax Return is attached hereto as Exhibit 13.

30. In connection with the Indebtedness, the Borrower delivered to EagleBank a balance sheet as of January 31, 2013 and a profit and loss statement as of January, 2013 (collectively, the "DTREDS Balance Sheet"). According to the DTREDS Balance Sheet, the Borrower's total assets were $2,403,700.87 and total liabilities were $2,246,549.18. A copy of the DTREDS Balance Sheet is attached hereto as Exhibit 14.

31. In connection with the Indebtedness, the Borrower delivered to EagleBank an accountant's report on the Borrower's financial condition ("Accountant's Report"). A copy of the Accountant's Compilation Report is attached hereto as Exhibit 15.

32. Also in connection with the Indebtedness, the Borrower delivered to EagleBank a profit & loss statement as of June, 2013 (the "DTREDS P&L Statement") which included

5

various expenses, including employee payroll wages expenses and taxes paid (collectively, the DTREDS Balance Sheet, Accountant's Report and DTREDS P&L Statement are referred to as the "DTREDS Financial Documents"). A copy of the DTREDS P&L Statement is attached hereto as Exhibit 16.

33. EagleBank agreed to extend credit to the Borrower, and to increase the amount of credit available to the Borrower, after reasonably relying on the DTREDS Financial Documents and the Ferraco PFS provided by the Debtor as Manager and CEO for the Borrower.

34. Contrary to the representations on the DTREDS Financial Documents, the Debtor omitted various significant and material liabilities, particularly employee 401(k) contributions that were not distributed to the Borrower's 401(k) plan administrator and federal tax liabilities for employee salary withholding taxes, rendering the DTREDS Financial Documents materially false and misleading.

### I. The Failure to Disclose the IRS Tax Liability

35. At the Borrower's first meeting of creditors on August 26, 2015 (the "341 Meeting"), the Debtor testified that the Borrower had failed to pay approximately $650,000 to the federal government that had been withheld from employees' paychecks as withholding taxes. Copies of the relevant pages from the 341 Meeting Transcript are attached hereto as Exhibit 17. *See* Exhibit 17 (341 Meeting 111:20–112:23).

36. Based upon testimony at the 341 Meeting, since 2012, the amount of money deducted and collected from employees' paychecks but not paid to the Internal Revenue Service ("IRS") exceeded $650,000 (the "IRS Tax Liability"). *See id*.

37. According to the Debtor, the money "may have been used for the next employee paycheck and used for operations, just to keep the company moving forward." *See* Exhibit 1 (Ferraco Dep. 50:2-5).

38. The IRS has filed a proof of claim against the Borrower for $1,675,923.90 of unsecured priority claims for unpaid withholding taxes.

39. The decision to use the IRS Tax Liability funds for continuing operations was solely that of the Debtor and no one else at the company. *See* Exhibit 1 (Ferraco Dep. 50:6-9).

40. At the time of applying for the EagleBank loans, the Debtor had actual knowledge that, rather than paying the withholding taxes to the IRS, these funds were being used for the Borrower's own operations and were thus a liability of the Borrower. *See* Exhibit 1 (Ferraco Dep. 67:7-13).

41. When questioned about the Borrower's failure to pay the IRS Tax Liability, the Debtor admitted that the failure to pay the taxes set off an "alarm signal someplace." *See* Exhibit 17 (341 Meeting 86:7-15). Still, the Borrower failed to pay the IRS withholding taxes that were due and owing.

42. Furthermore, the Debtor failed to include the IRS Tax Liability on any of the DTREDS Financial Documents provided to EagleBank at the time of applying for the EagleBank Loans.

### II. The Failure to Disclose the 401(k) Liability

43. The Borrower's employees had access to a 401(k) retirement savings plan through which employees elected to have certain amounts of their monthly paychecks withheld from their salary to be contributed to their 401(k) retirement savings account.

44. The Borrower had an obligation to deliver these withheld funds to the 401(k) plan administrator to be distributed to the individual employees' 401(k) retirement accounts.

45. Beginning in 2012, the Borrower did not deliver the employees' 401(k) payments to the plan administrator. Instead, these funds were used for the Borrower's continued operations (the "401(k) Liability"). *See* Exhibit 1 (Ferraco Dep. 52:12–53:2); Exhibit 16 (341 Meeting 122:11-13).

46. The Borrower used approximately $500,000 of the employees' 401(k) contributions for continuing operations and never paid that money to the employees' 401(k) savings accounts. *See* Exhibit 17 (341 Meeting 122:11-13).

47. The decision to use the employees' 401(k) payments for continuing business operations was solely that of the Debtor and no one else at the company. *See* Exhibit 1 (Ferraco Dep. 52:20–53:2); Exhibit 17 (341 Meeting 126:10-11).

48. At the time of applying for the EagleBank loans, the Debtor had actual knowledge that rather than delivering the 401(k) withholdings to the plan administrator, the 401(k) funds were being held in the same account for ongoing operations of the business and were thus a liability of the Borrower. *See* Exhibit 17 (341 Meeting 121:12–122:21).

49. When discussing the Debtor's use of the 401(k) Liability funds for continuing operations, the Debtor testified that he "could relate it to the term ***fog of war*** of trying to continue operations moving forward. I was not focused on the 401(k). I was focused on the big picture of keeping the company open and keeping operations open and scaling down unnecessary resources." Exhibit 17 (341 Meeting 116:10-14 (emphasis added)).

50. Furthermore, the Debtor failed to include the 401(k) Liability on any of the DTREDS Financial Documents provided to EagleBank at the time of applying for the EagleBank Loans.

### III. The IRS Tax Liability and 401(k) Liability Omissions were Material and Intentional

51. The unpaid 401(k) funds and the unpaid withholding taxes were significant liabilities of the Borrower at the time the Borrower applied for the EagleBank loans and submitted the DTREDS Financial Documents to EagleBank.

52. The Debtor had actual knowledge that the IRS Tax Liability and the 401(k) Liability were unpaid obligations of the Borrower, and that the Borrower was using those funds for continuing operations.

53. As the Debtor testified, "it was more important to keep the business moving, get new contracts to get the money there to make sure we didn't turn the lights off to be able to pay everybody back," than to pay the IRS Tax Liability or to pay the 401(k) Liability. *See* Exhibit 1 (Ferraco Dep. 68:13-16).

54. The Debtor was on a committee responsible for overseeing and monitoring the Borrower's cash. While the Debtor was one of four employees on this committee, Debtor testified that "at the end of the day, . . . the ultimate decision [concerning the 401(k) funds] was me." *See* Exhibit 17 (341 Meeting 125:7–126:11).

55. Steve Vento, administrative officer for the Borrower, also sat on the committee overseeing and monitoring the cash of the Borrower, and testified at the 341 Meeting that "We didn't have fidelity in our accounting system. . . . [W]e don't have any fidelity in any of the numbers. We don't believe in it." *See* Exhibit 17 (341 Meeting 90:8-15).

9

56. The DTREDS Financial Statement that Borrower submitted to EagleBank showed a profit that was materially false and misleading. Mian Pei, the Borrower's former Chief Financial Officer, testified that the Borrower was "never profitable" and that the DTREDS Financial Statement was wrong when submitted to EagleBank. *See* Exhibit 17 (341 Meeting 89:8-16).

57. At the time that Borrower delivered to EagleBank the DTREDS Financial Documents, the Debtor had knowledge that the written information respecting the Borrower's financial condition was materially false and misleading.

### COUNT I (Fraud as to Note 1)
### 11 U.S.C. § 523(a)(2)(B)

58. EagleBank incorporates by reference the allegations of paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. The DTREDS Financial Documents failed to include more than $1 million of liabilities incurred as a result of the Borrower's failure to pay the IRS Tax Liability and the Borrower's wrongful taking of the 401(k) Liability.

60. Neither the Borrower nor the Debtor ever provided EagleBank with any documentation indicating that there was an additional amount of approximately $1 million in liabilities that the Borrower owed.

61. The Debtor, as managing member and owner of the Borrower, delivered to EagleBank financial statements containing materially false information, including without limitation the DTREDS Balance Sheet, DTREDS P&L Statement, and the Ferraco PFS.

62. The Debtor testified that he was the one who made the decisions to withhold both the withheld IRS payroll taxes and the 401(k) funds.

63. EagleBank reasonably relied upon the Debtor's representations in extending credit under Note 1 to the Borrower and the Debtor.

64. The Debtor made these false assertions with the intent to deceive EagleBank.

65. As a direct and proximate result of the Debtor's fraudulent representations, EagleBank suffered damages, as described herein.

**WHEREFORE**, EagleBank prays that this Honorable Court determine that the judgment against the Debtor in the amount of $968,372.56 is non-dischargeable, and that EagleBank be granted such other and further relief as is just and proper.

### COUNT II (Fraud as to Note 2)
### 11 U.S.C. § 523(a)(2)(B)

66. EagleBank incorporates by reference the allegations of paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. The DTREDS Financial Documents failed to include more than $1 million of liabilities incurred as a result of the Borrower's failure to pay the IRS Tax Liability and the Borrower's wrongful taking of the 401(k) Liability.

68. Neither the Borrower nor the Debtor ever provided EagleBank with any documentation indicating that there was an additional amount of approximately $1 million in liabilities that the Borrower owed.

69. The Debtor, as managing member and owner of the Borrower, delivered to EagleBank financial statements containing materially false information, including without limitation the DTREDS Balance Sheet, DTREDS P&L Statement, and the Ferraco PFS.

70. The Debtor testified that he was the one who made the decisions to withhold both the withheld IRS payroll taxes and the 401(k) funds.

11

71. EagleBank reasonably relied upon the Debtor's representations in extending credit under Note 2 to the Borrower and the Debtor.

72. The Debtor made these false assertions with the intent to deceive EagleBank.

73. As a direct and proximate result of the Debtor's fraudulent representations, EagleBank suffered damages, as described herein.

**WHEREFORE**, EagleBank prays that this Honorable Court determine that the judgment against the Debtor in the amount of $2,671,164.64 is non-dischargeable, and that EagleBank be granted such other and further relief as is just and proper.

### COUNT III (Fraud as to the Modification)
### 11 U.S.C. § 523(a)(2)(B)

74. EagleBank incorporates by reference the allegations of paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. The DTREDS Financial Documents failed to include more than $1 million of liabilities incurred as a result of the Borrower's failure to pay the IRS Tax Liability and the Borrower's wrongful taking of the 401(k) Liability.

76. Neither the Borrower nor the Debtor ever provided EagleBank with any documentation indicating that there was an additional amount of approximately $1 million in liabilities that the Borrower owed.

77. The Debtor, as managing member and owner of the Borrower, delivered to EagleBank financial statements containing materially false information, including without limitation the DTREDS Balance Sheet, DTREDS P&L Statement, and the Ferraco PFS.

78. The Debtor testified that he was the one who made the decisions to withhold both the withheld IRS payroll taxes and the 401(k) funds.

79. EagleBank reasonably relied upon the Debtor's representations in increasing the amount of credit available to the Borrower and Debtor under the Modification.

80. The Debtor made these false assertions with the intent to deceive EagleBank.

81. As a direct and proximate result of the Debtor's fraudulent representations, EagleBank suffered damages, as described herein.

**WHEREFORE**, EagleBank prays that this Honorable Court determine that the judgment against the Debtor in the amount of $2,671,164.64 is non-dischargeable, and that EagleBank be granted such other and further relief as is just and proper.

Respectfully submitted,

**SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.**

By:  /s/ Stephen A. Metz
Stephen A. Metz (Va. Bar No. 89738)
Michael J. Lichtenstein (admitted *pro hac vice*)
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
TEL: (301) 230-6564 (Metz)
(301) 230-5231 (Lichtenstein)
FAX: (301) 230-2891
Email: smetz@shulmanrogers.com
mjl@shulmanrogers.com

*Counsel for EagleBank*

Dated: January 14, 2016

F: 113852.00417
10204802_5.doc